Brian S. King, #4610
**Brian S. King, Attorney at Law**
336 South 300 East, Suite 200
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facsimile: (801) 532-1936
brian@briansking.com

Attorney for Plaintiffs

---

**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

---

| | | |
|---|---|---|
| T. W., individually and as guardian of A. W., a minor, | : | |
| | : | |
| Plaintiff, | : | COMPLAINT |
| | : | |
| vs. | : | |
| | : | Civil No.  1:13-CV-00106 EJF |
| ANTHEM BLUECROSS AND BLUESHIELD, QUADRAMED and THE QUADRAMED PLAN, | : | |
| | : | |
| Defendants. | : | |

T. W., individually and as guardian of A.W. and through his undersigned counsel, complains and alleges against Defendants Anthem BlueCross and BlueShield ("Anthem"), QuadraMed, and the QuadraMed Plan ("the Plan") as follows:

**PARTIES, JURISDICTION AND VENUE**

1. T.W. is a natural person residing in Sonoma County, State of California.  He is A.W.'s father.

2. Anthem is a foreign corporation doing business across the United States. Anthem acted as the administrator of A.W.'s claims for benefits made through the Plan, a self-funded employee welfare benefits plan sponsored by T.W.'s employer, QuadraMed. A.W. is a beneficiary of the Plan.

3. The Plan covering A.W. is an employee welfare benefits plan under 29 U.S.C. § 1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA").

4. A.W. received medical care and treatment in Utah at Island View Residential Treatment Center ("Island View"), a residential treatment facility licensed by the state of Utah to provide care and treatment for adolescents with serious mental health conditions.

5. Anthem, QuadraMed, and the Plan denied A.W.'s claims for coverage for her treatment at Island View. This lawsuit is brought to obtain this Court's order requiring Anthem, QuadraMed, and the Plan to pay for A.W.'s unpaid medical expenses at Island View.

6. This Court has jurisdiction of this case under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

7. Venue is appropriate under 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(c) because the medical treatment at issue in this case was provided in Syracuse, Utah and Anthem does business in the state of Utah. In addition, Plaintiff's financial obligations to A.W.'s healthcare providers were incurred in the state of Utah.  Based on ERISA's nationwide service of process provision and 28 U.S.C. § 1391, venue is appropriate in the state of Utah.

8. The remedies the Plaintiffs seek under the terms of ERISA and under the Plan are for the benefits due and pursuant to 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1185a(a)(3)(A), an award of prejudgment interest and an award of attorney fees and costs pursuant to 29 U.S.C. § 1132(g).

**FACTUAL BACKGROUND**
**A.W.'s Developmental and Medical Background**

9. A.W. began cutting herself when she was twelve years old. She was diagnosed with depression when she was thirteen. Since that time, A.W. has battled chronic depression and has made multiple attempts at suicide.

10. In an effort to resolve the symptoms of her depression and suicidal ideation, A.W. sought help through inpatient hospitalization, outpatient treatment, and pharmacological treatment which included trials of the following medication: Abilify, Wellbutrin, Zoloft, Remeron, Ambien, Benadryl and Ativan.

11. In March of 2011, A.W. was hospitalized at John Muir Behavioral Health because of suicidal ideation. Prior to hospitalization, A.W. had sent an email to the police in which she expressed her suicidal thoughts.

12. A.W. was also admitted to Alta Bates Adolescent Behavioral Health ("Alta Bates") on three separate occasions.

13. On May 6, 2011, A.W. was hospitalized at Alta Bates because she attempted to hang herself with an electrical cord.

14. A.W. was hospitalized at Alta Bates again on June 5, 2011, because she attempted to commit suicide by overdosing on medications including Zoloft.

15. Finally, on June 23, 2011, while being treated at a partial hospitalization program ("PHP"), A.W. was admitted to Alta Bates with suicidal ideation and for cutting her arms. She had run away from the PHP, bought a pair of scissors at a store, and cut herself.

16. At that point, A.W. required a higher level of care. Her multiple attempts at treatment had failed.

17. A.W. was admitted to Island View on July 1, 2011, with intra-psychic disorder, significant disturbances in environmental relationships, and diagnoses of:

| | |
|---|---|
| AXIS I: | 296.90 Mood Disorder NOS |
| | 296.34 Major Depressive Disorder, Recurrent Severe, with Psychotic Features |
| | 313.82 Identity Problem |
| | 300.00 Anxiety Disorder NOS |
| | V61.20 Parent-Child Relational Problem |
| AXIS II: | Borderline Traits |
| AXIS III: | None |
| AXIS IV: | Environmental and Psychosocial Stressors |
| AXiS V: | Current GAF: 30   Highest Past Year GAF: 40[1] |

18. Upon her admission to Island View, A.W. was placed on suicide precautions. A.W.'s chief complaint at the time was "I'm here for suicidal thoughts and because I went AWOL."

19. On July 2, 2011, Frankie Davis, A.P.R.N., conducted a psychiatric evaluation of A.W. under the supervision of Kirk Simon, M.D. As part of the psychiatric evaluation, Ms. Davis asked A.W. a series of questions. When Ms. Davis asked A.W. to describe the three things which make her happy, she said "nothing."

20. Additionally, when asked what she would change about herself, A.W. stated that "I want to be dead, but I can't think of any other things."

21. She also reported a significant amount of anger because "I have to live and my mom didn't abort me."

---

[1] The global assessment of functioning ("GAF") was developed as a tool for mental healthcare providers to assess the overall level of functioning and ability to carry out activities of daily living for their patients. A GAF of 30 indicates, "Behavior is considerably influenced by delusions or hallucinations *or* serious impairment, in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) *or* inability to function in almost all areas (e.g., stays in bed all day, no job, home, or friends)." A GAF of 40 indicates, "Some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) *or* major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed adult avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)."

22. A.W. received treatment at Island View from July 1, 2011, through December 31, 2011. Her treatment included family, group and individual therapy along with medication management.

23. Anthem wholly denied coverage for A.W.'s treatment at Island View.

24. In its initial denial letter, dated May 14, 2011, Anthem notified A.W. that the Plan covered residential treatment for substance abuse, but did not include benefit coverage for mental health residential services.

25. On July 10, 2012, A.W. appealed Anthem's denial. A.W.'s appeal was based on the Federal Mental Health Parity and Addictions Equity Act of 2008 ("MHPAEA"), which applied to the Plan since her father's employer, QuadraMed, had more than 50 employees.

26. However, in a letter dated August 1, 2012 from Anthem and a letter dated October 31, 2012 from QuadraMed's Senior V.P. over Human Resources and Administrative Services, the Plan maintained the denial of coverage for A.W.'s treatment.

27. MHPAEA requires the Plan to ensure that the financial requirements and treatment limitations applicable to A.W.'s mental health benefits are no more restrictive than the requirements and limitations applied to substantially all other medical/surgical benefits. Contrary to those requirements, the Plan allowed coverage for residential treatment of substance abuse, but excluded coverage for mental health residential treatment.

28. Anthem erred in the denial of coverage for A.W.'s treatment at Island View because it applied disparate limits to mental and physical health disorders in violation of MHPAEA requirements[2].

29. T.W. has exhausted the pre-litigation appeal process as required under the terms of the Plan.

---

[2] T.W.'s Plan began using a new claims administrator, United Behavioral Health ("UBH"), on January 1, 2012. A.W. was still a patient at Island View at that time and UBH, under the same Anthem policy, paid for A.W.'s residential treatment.

## CAUSE OF ACTION
**(Claim for Recovery of Benefits Under 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1185a(a)(3)(A))**

30. ERISA imposes higher-than-marketplace quality standards on insurers.  It sets forth a special standard of care upon a plan fiduciary such as Anthem, namely that the insurer "discharge [its] duties in respect to claims processing solely in the interests of the participants and beneficiaries" of the Plan.  29 U.S.C. § 1104(a)(1).

31. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim denials.  29 U.S.C. § 1133(2).

32. MHPAEA amended ERISA to require parity of coverage among mental health and medical/surgical benefits in the event that an employee benefit plan provides both medical and surgical benefits and mental health or substance use disorder benefits.  29 U.S.C. § 1185a(a)(3)(A).

33. MHPAEA dictates that a group health plan, such as the plan covering A.W., may not impose treatment limitations or financial requirements upon mental health benefits which are more restrictive than the limitations and requirements applied to substantially all medical and surgical benefits covered by the plan. 29 U.S.C. § 1185a(a)(3)(A)(i)-(ii)).

34. QuadraMed, Anthem, and the Plan breached their fiduciary duties to A.W. when they failed to comply with their obligations under 29 U.S.C. §1104, 29 U.S.C. § 1133, and 29 U.S.C. § 1185(a) to act solely in A.W.'s interest, for the exclusive purpose of providing mental health benefits to ERISA participants and beneficiaries, and to provide a full and

fair review of A.W.'s claims to ensure that her mental health benefits were in parity with her other covered benefits.

35. The actions of QuadraMed, Anthem and the Plan in failing to provide coverage for A.W.'s mental health treatment at Island View are a violation of ERISA and MHPAEA as the Plan's criteria for residential treatment included coverage for substance abuse treatment without parity in coverage for mental health treatment.

36. The actions of QuadraMed, Anthem and the Plan, as outlined above, have damaged T.W. and A.W. in the form of denial of payment for medical services rendered to A.W. totaling approximately $67,868.00.

37. QuadraMed, Anthem and the Plan are responsible to pay A.W.'s medical expenses as benefits due under the terms of the Plan together with prejudgment interest pursuant to U.C.A. § 15-1-1, attorney fees and costs pursuant to 29 U.S.C. § 1132(g).

WHEREFORE, the Plaintiff seeks relief as follows:

1. Judgment in the amount of $67,868.00, the total unpaid amount that is owed for A.W.'s mental health treatment at Island View, plus pre and post-judgment interest to the date of payment;

2. Attorney fees and costs incurred pursuant to 29 U.S.C. § 1132(g); and

3. For such further relief as the Court deems just and proper.

DATED this 1st day of August, 2013.

By    s/ Brian S. King
      Brian S. King
      Attorney for Plaintiffs

Plaintiff's Address:

Sonoma County, California